IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY and STATE AUTOMOBILE MUTUAL INSURANCE COMPANY,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **FRUIT FUSION, INC., and TAYLOR PATT, individually and on behalf of all others similarly situated,** <br><br> **Defendants.** | Case No. 3:21-CV-1132-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Default Declaratory Judgment filed by Plaintiffs State Auto Property & Casualty Insurance Company and State Automobile Mutual Insurance Company ("State Auto"). (Doc. 14). State Auto seeks an order declaring that it owes no duty to defend Fruit Fusion, Inc., for the claims made by Taylor Patt in a case pending in the Circuit Court of St. Clair County, Illinois. For the reasons set forth below, the motion is granted.

### BACKGROUND

Fruit Fusion, Inc., is an Illinois corporation that operates ice cream and frozen yogurt shops. (Doc. 1). State Auto issued Commercial General Liability Insurance policies to Fruit Fusion for its Belleville and Fairview Heights, Illinois, locations on April 16, 2016. (*Id.*). The policies have been renewed annually. (Docs. 1-2 to 1-13).

On June 21, 2021, a class action lawsuit was filed against Fruit Fusion by Claimant Taylor Patt in the Circuit Court of St. Clair County, Illinois, Case No. 21 L 570 ("the Underlying Action"). (Doc. 1-14). Patt alleges that Fruit Fusion (1) caused the biometric data from employees' fingerprints to be recorded, collected, and stored; (2) did not inform employees of the specific purpose and length of term their biometric data would be collected, stored and/or used; (3) did not obtain written consent to "record, collect, obtain, and/or store Plaintiff and class members' biometric data;" (4) did not disclose its retention and destruction guidelines or for what purpose and length it would be using the biometric data; and (5) did not disclose to Plaintiff the identities of any third parties with whom Defendant was directly or indirectly sharing, disclosing, or otherwise disseminating class members' biometric information. (*Id.* at ¶¶ 18-24). Patt alleges that every instance of Fruit Fusion "collecting, capturing, storing, and/or sharing" Claimant's biometrics is a violation of BIPA and asks the Court to require Fruit Fusion to disclose "to whom it has disseminated, sold, or transferred Plaintiff and class members' biometric data." (*Id.* at ¶¶ 31, 42).

Fruit Fusion tendered its defense to State Auto, and State Auto accepted that tender subject to a reservation rights. (Doc. 1 at p. 5). On September 14, 2021, State Auto filed a Complaint for Declaratory Judgment in this Court seeking a declaration that it has no duty to defend Fruit Fusion under either policy issued to the company. (Doc. 1). State Auto joined Patt as a defendant so that she may be bound by the judgment entered in this case. (*Id.*).

Both Fruit Fusion and Patt failed to answer the Complaint, and the Clerk of Court

entered default pursuant to Federal Rule of Civil Procedure 55(a) as to both Defendants. (Docs. 11, 13). State Auto then filed the instant Motion for Default Declaratory Judgment.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). State Auto Property and Casualty Insurance Company is an Iowa insurance corporation with its principal place of business in Columbus, Ohio. (Doc. 1). State Automobile Mutual Insurance Company is an Ohio insurance corporation with its principal place of business in Columbus, Ohio. (*Id.*). Fruit Fusion is an Illinois corporation with its principal place of business in Illinois, and Patt is a citizen of Illinois. (*Id.*). Thus, the parties are completely diverse.

In addition, the amount in controversy exceeds $75,000, exclusive of interest and costs. In a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation." *State Auto Prop. & Cas. Ins. Co. v. Leitschuh*, No. 3:19-CV-3169, 2019 WL 9831022, at *1 (C.D. Ill. Sept. 17, 2019) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). "The object of the litigation is the pecuniary result that would flow to the plaintiff or the defendant from the court granting the declaratory judgment." *Id.* (quoting *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004)). Here, State Auto asserts the amount in controverse exceeds $75,000, exclusive of interest and costs, which is supported by the claims made in the Underlying Action. There, Patt seeks statutory damages of $5,000 for each willful and/or reckless violation of BIPA, statutory damages of $1,000 for each negligent violation of the Act, punitive damages, attorneys' fees and costs, and pre- and post-judgment interest. Given

Patt's prayer for relief and the fact that the Underlying Action was filed as a class action, the Court finds State Auto could be subject to liability well in excess of the jurisdictional minimum.

## LEGAL STANDARD

Rule 55(a) requires the clerk to enter default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. FED. R. CIV. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed. 2010). "Once default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)).

## DISCUSSION

In Illinois, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021) (quoting *Windridge of Naperville Condominium Ass'n v. Philadelphia Indemnity Insurance Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019)). The court must "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (quoting *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018)). An unambiguous contract must be applied as written. *Id.*

In an insurance coverage dispute, the burden is initially on the insured party to

show that its losses are covered under the policy's coverage terms. *Id.* (citing *Addison Insurance Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009)). A duty to defend arises if the allegations in the complaint fall within or potentially within the coverage of the policy. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). This is known as the "eight corners" rule: "the court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage. If they do, the insurer has a duty to defend." *Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.*, 829 F.3d 509, 513–14 (7th Cir. 2016) (internal citation omitted). An insurer "may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Id.* at 514 (quoting *Pekin Ins. Co. v. United Contractors Midwest, Inc.*, 997 N.E.2d 235, 241 Ill. (2013)). Both an insurance policy and an underlying complaint are liberally construed in favor of the insured. *Church Mut. Ins. Co. v. Prairie Vill. Supportive Living, LLC*, No. 21 C 3752, 2022 WL 3290686, at *3 (N.D. Ill. Aug. 11, 2022).

Once a duty to defend has been established, the burden shifts to the insurer to demonstrate that an exclusion applies. *Bradley Hotel Corp.*, 19 F.4th at 1006. "Exclusions are read narrowly and apply only if their application is 'clear and free from doubt.'" *Id.* (quoting *Scottsdale Insurance Co. v. Columbia Insurance Group, Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)).

### A. State Auto's "Personal and Advertising Injury" Provision

State Auto first argues there are no allegations of "bodily injury," "property damage," or "personal and advertising injury" in the Underlying Action as those terms are defined by State Auto's policies. Thus, there is no applicable coverage.

The policies at issue define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Docs. 1-2 through 1-13).

"Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(*Id.*).

As relevant here, "personal and advertising liability" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

* * *

> e. Oral or written publication, in any manner, of material that violates a person's right of privacy[.]

The Court agrees that Patt does not allege any bodily injury or property damage

as those terms are defined in the State Auto policies. With regard to personal and advertising injury, State Auto owes a duty to defend Fruit Fusion if Patt has made allegations of an "oral or written publication, in any manner, of material that violates a person's right of privacy." The policies do not define "publication." (*Id.*).

In *West Bend Mutual Insurance Company v. Krishna Schaumburg Tan, Inc.*, a case with similar facts as those here, the Illinois Supreme Court addressed the meaning of "publication." *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 50 (Ill. 2021). In that case, the claimant alleged her employer disclosed her biometric identifiers and biometric information to one other party: SunLync, an out of state vendor. *Id.* West Bend argued that "publication" means communication to the public at large and that disclosure to a single party cannot be considered a publication. *Id.* at 53. Therefore, its policy did not provide coverage for the claimant's alleged injury. *Id.*

Because the policy itself did not define "publication," the Illinois Supreme Court turned to dictionaries, treatises, and the Restatement of Torts to determine the definition. The court concluded that the term "publication" has at least two definitions and means both the communication of information to a single party *and* the communication of information to the public at large. *Id.* at 57. "If a term has multiple reasonable definitions or is subject to more than one reasonable interpretation within the context in which it appears . . . the term is ambiguous." *Id.* Because ambiguous terms are strictly construed against the insurer, the court found the West Bend policy covered the insured's alleged communication of biometric information to a single party. *Id.*

Here, Patt alleges that employees were required to scan their fingerprints to clock

in and out, Fruit Fusion recorded and stored employees' fingerprints, and Fruit Fusion "did not disclose to Plaintiff the identities of any third parties with whom Defendant[] was directly or indirectly sharing, disclosing, or otherwise disseminating class members' biometric information." (Doc. 1-14 at ¶ 25). She also alleges that every instance of Fruit Fusion "collecting, capturing, storing, and/or sharing" was a violation of BIPA. (*Id.* at ¶ 31). State Auto argues that, unlike *West Bend*, Patt's complaint contains no factual allegations that Fruit Fusion actually disclosed, communicated, provided, or shared her fingerprint data with any third party. She only alleges that, if Fruit Fusion did do this, it did not inform her of the identities of the third parties. Without any factual allegations that Fruit Fusion shared Patt's biometric identifiers or information with a third party, State Auto argues, the complaint does not allege "publication" and does not trigger coverage under the "personal and advertising injury" provisions of State Auto's policies.

While the Court agrees that Patt's allegations are not artfully drafted, the Court must construe the complaint liberally in favor of the insured. Patt essentially alleges that Fruit Fusion disclosed her biometric information to a third party or parties, did not inform her of the identity of those entities, and that by sharing her information, Fruit Fusion violated BIPA. Thus, the Court cannot say that it is *clear* from the face of the underlying complaint that the case does not potentially fall within the policy's coverage.

### B. *The Data Compromise Plus Endorsement in Policies Issued for the Fairview Heights Location*

State Auto next acknowledges that its policies issued for Fruit Fusion's Fairview Heights location, with the exception of policy No. 10069631CB (April 16, 2021 – April 16,

2022), contain an endorsement titled "DATA COMPROMISE PLUS," which provides limited coverage for a "personal data compromise." A "personal data compromise" is defined as "the loss, theft, accidental release or accidental publication of 'personally identifying information' or 'personally sensitive information' as respects one or more "affected individuals." (Docs. 1-2 at ¶¶ 4, 11). This coverage is subject to certain conditions, including that the Insured provide notifications and services to "affected individuals" "in consultation with State Auto "pursuant to Response Expenses coverage." (*Id.*).

Patt, however, does not allege a "personal data compromise" as that term is defined in the policy. She does not claim that Fruit Fusion lost, stole, or accidentally released or published her personal identifying information. Thus, the Court agrees that the "DATA COMPROMISE PLUS" endorsement does not apply here.

### C. *Potential Exclusions*

State Auto alternatively argues that, even if the complaint contains sufficient allegations to support that Fruit Fusion "published" biometric information, the policies contain exclusions that bar coverage.

#### 1. Employment-Related Practices Exclusion

State Auto first argues that its policies expressly exclude "personal and advertising injury" to a person that arises out of employment-related practices. Because the plain and unambiguous policy provisions clearly exclude employment-related practices, which necessarily include Patt's alleged violations of BIPA, the exclusion applies to bar coverage.

The exclusion states, in relevant part:

**Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

> **(1)** A person arising out of any:
>
>> **(a)** Refusal to employ that person;
>>
>> **(b)** Termination of that person's employment; or
>>
>> **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination directed at that person[.]

District courts that have interpreted State Auto's employment-related practices (ERP) exclusions in the BIPA context have rejected State Auto's argument. In *State Auto Mutual Insurance Company v. Tony's Finer Foods Enterprises, Inc.*, the court explained that all provisions of an insurance policy must be read together and every part given meaning. When doing so, subsection (c) clearly applies to "an adverse employment action, not any and all claims about something that happens at work." No. 20-CV-6199, 2022 WL 683688, at *5 (N.D. Ill. Mar. 8, 2022). The text does not stop at "employment-related practices, policies, acts or omissions," but rather goes on to name targeted, disciplinary actions against a specific employee. *Id.* at *7. Requiring all employees to clock into work using their fingerprints does not fit into that category and, thus, does not fall within the ERP exclusion. *Id.*; *see also Cont'l W. Ins. Co. v. Cheese Merchants of America, LLC*, No. 21-CV-1571, 2022 WL 4483886, at *4 (N.D. Ill. Sept. 27, 2022) (holding the exclusion for

employment-related practices does not apply to BIPA claims); *Am. Fam. Mut., Ins. Co., S.I. v. Carnagio Enterprises, Inc.*, No. 20 C 3665, 2022 WL 952533, at *6 (N.D. Ill. Mar. 30, 2022) (holding that requiring employees to clock in and out of work using their fingerprints does not fall within the ERP exclusion because the "scope of 'any' in this exclusion is only as broad as the definition of "employment-related practices" allows it to be); *Citizens Ins. Co. of Am. v. Highland Baking Co., Inc.*, No. 20-CV-04997, 2022 WL 1210709, at *1 (N.D. Ill. Mar. 29, 2022) (ERP exclusion did not unambiguously preclude coverage of BIPA claim); *Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, No. 20-cv-05980, 2022 WL 602534 (N.D. Ill. Mar. 1, 2022).

This Court agrees with these well-reasoned opinions. Interpreting the ERP exclusion to bar coverage for any employment-related practice that could cause harm to an employee would broadly preclude coverage for *any* claim against an employer. "Such a result would be contrary to the rule that policy exclusions must be read narrowly and applied only where clear, definite, and specific." *Thermoflex Waukegan, LLC*, No. 20-CV-05980, 2022 WL 602534, at *5 (cleaned up). Because State Auto's ERP exclusion does not unambiguously exclude coverage of Patt's BIPA claim, the Court finds it does not bar coverage.

2. Recording and Distribution of Material or Information in Violation of Law Exclusion

State Auto next argues its "Recording and Distribution of Material or Information in Violation of Law Exclusion" bars coverage. This exclusion states:

This insurance does not apply to:

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\* \* \*

d. Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

State Auto argues that if the Court finds that Patt has alleged Fruit Fusion published her protected information by disseminating it (and thus has alleged a personal and advertising injury), then this exclusion clearly applies to bar coverage. State Auto directs this Court to *Krishna*, in which the Illinois Supreme Court held that an exclusion titled "Violation of Statutes that Govern E-mails, Fax, Phone Calls or Other Methods of Sending Material or Information" did *not* apply to BIPA claims. *Krishna*, 183 N.E.3d at 61. In *Krishna*, the court found that the exclusion enumerated the statutes that the insurer's policies did not apply to: (1) the TCPA, (2) the CAN-SPAM Act, and (3) statutes "other than" the TCPA or CAN-SPAM Act that prohibit or limit the communication of information. *Id.* at 60. The court then construed the "other than" language to mean other statutes of the same general kind that regulate methods of communication like the TCPA and the CAN-SPAM Act. *Id.* Because regulating telephone calls, faxes, and e-mails under the TCPA and CAN-SPAM Act is fundamentally different from regulating the collection, use, storage, and retention of biometric identifiers and information under BIPA, the Court

Page 12 of 15

held that the exclusion did not apply or at the very least was ambiguous. *Id.* at 61.

State Auto argues the outcome here should be different here because the title of its exclusion— Recording and Distribution of Material or Information in Violation of Law— is much broader than the title in *Krishna*, which focused on statutes that govern methods of sending material or information. Furthermore, the text of the exclusion contains the terms "collecting" and "recording," which indicates that the exclusion applies to more than statutes concerned with the method of sending information such as the TCPA and CAN-SPAM Act. Finally, State Auto argues, the inclusion of the Fair Credit Reporting Act (FCRA) within the exclusion shows that BIPA is similarly excluded, as the FCRA and BIPA both are concerned with the collection and transmittal of private information.

In *Thermoflex*, the court examined the same exact exclusionary language contained in State Auto's policy, as well as the same arguments made by State Auto here. *Thermoflex Waukegan, LLC*, No. 20-CV-05980, 2022 WL 602534, at *6 (N.D. Ill. Mar. 1, 2022). The court agreed that the differences between the language in *Krishna* and the policy at hand broadened the scope of the exclusion. *Id.* Nevertheless, the court questioned whether the added breadth barred coverage. *Id.* The court observed that the TCPA and CAN-SPAM regulate methods of communication and the FCRA regulates the use of materials such as background reports, but BIPA, by contrast, regulates the collection, use, storage, and retention of biometric identifiers and information. *Id.* The Court held that, "[a]t best, it is unclear whether BIPA is sufficiently similar to those other statutes; at worst, as in *Krishna*, BIPA is different in kind." *Id.* Because the exclusion could be viewed as ambiguous, the court construed the policy in favor of finding coverage. *Id.* Other courts have come to the

same conclusion and found that the exclusion does not apply to BIPA claims. *See Highland Baking Co.*, 2022 WL 1210709, at *1; *Carnagio Enters., Inc.*, 2022 WL 952533, at *6; *Citizens Ins. Co. of Am. v. Wynndalco Enterprises, LLC*, No. 20 C 3873, 2022 WL 952534, at *6 (N.D. Ill. Mar. 30, 2022).

But not all. In *Cheese Merchants*, decided just days ago, the court reviewed the same exclusionary language at issue here. After a thorough analysis and applying the canons of construction, the *Cheese Merchants* court found that the inclusion of the FCRA in the exclusion made that case "meaningfully different" from *Krishna*. *Cheese Merchants*, No. 21-CV-1571, 2022 WL 4483886, at *16 (N.D. Ill. Sept. 27, 2022). The court observed that the exclusion "covers two types of privacy statutes: two statutes that protect privacy when communicating with consumers (the TCPA and the CAN-SPAM Act), and one statute that protects the privacy of information given by consumers (the FCRA). The inclusion of the FCRA expands the scope of the exclusion. And it signals that the general provision is not limited to communicating with consumers." *Id.* The court ultimately predicted that "the Illinois Supreme Court would recognize the material expansion of the text, and conclude that the exclusion applies" to BIPA claims. *Id.*

This Court agrees. Patt has arguably alleged that Fruit Fusion "published" her personal information when it disclosed her biometric information to a third party or parties and that it violated BIPA by not informing her of the identities of these parties. And BIPA is a state statute that "addresses, prohibits or limits" the collection, retention, dissemination, and disposal of information. Accordingly, the Court agrees that Patt's claim falls within State Auto's exclusion.

CONCLUSION

For these reasons, the Motion for Default Declaratory Judgment filed by Plaintiffs State Auto Property & Casualty Insurance Company and State Automobile Mutual Insurance Company (Doc. 14) is **GRANTED**. State Auto owes no duty to defend its Insured, Fruit Fusion, Inc., in the Underlying Action.

**IT IS SO ORDERED.**

DATED:   September 29, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**